IRBY MORGAN & CO. v. JAMES C. SNELL, et als.

1. CONTRACT. *Sale of land. Consideration Confederate money.* A contract for the sale of land was not rendered illegal and void by the simple fact that the consideration was Confederate Treasury notes, the contract having been freely and fairly made, and the consideration having been voluntarily received.

   Code cited: §§2030, 2073.

2. SAME. *Title bond. Registration of Its effect.* After the execution and registration of a title-bond, the vendor has no such interest in the lands as can be levied on and sold, where it defeats the interest already acquired by the vendee. A purchasing creditor of the vendor, at Sheriff's sale under such levy, will hold only the naked legal title as trustee for the vendee.

3. SAME. *Tender of compromise.* The purchaser at Sheriff's sale, rejecting a tender of compromise, and electing to risk his title to the land upon the result of litigation with the original vendee, thereby precluded himself from any claim to the money tendered, and forfeits all right to fall back upon an election which only depended upon his giving up the litigation, unless the vendee fails to insist upon his superior title, and merely seeks to redeem the land; in such case he would be estopped from claiming the land without paying the redemption money.

FROM BEDFORD.

Appeal from the Chancery Court. JNO. P. STEELE, Chancellor.

E. H. EAST, COLYAR, MARKS & TURNEY and DAVIDSON & BUCHANAN for Morgan & Co.

SCUDDER, WISENER & IVEY for Snell.

NICHOLSON, C. J., delivered the opinion of the Court

On the 11th of May, 1863, Meredith P. Gentry, agreed with Irby Morgan, of the firm of Irby Morgan & Co., to sell and convey to him his tract of land of 850 acres, in Bedford county, for $60,000 in Confederate Treasury notes. The money was paid, and its payment acknowledged in an obligation of that date, in which Gentry bound himself, at a subsequent time, to execute to Morgan a deed in fee simple, with full warranty of title. This obligation was registered in Bedford county, on the 12th of May, 1863. In pursuance of his bond, on the 11th of September, 1865, Gentry executed to Irby Morgan & Co., a deed in fee simple for the land, the consideration money having belonged to that firm, who thereupon went into possession of the land. But after the execution of the bond for title, and before the execution of the deed, to-wit, on the 12th of April, 1864, James C. Snell, as administrator of W. L. Brown, recovered a judgment in the Circuit Court of Bedford county, for $2,483.93 against Gentry, on which execution issued, and was levied on the land as Gentry's property, and it was sold on the 19th of July, 1864, when James C. Snell became the purchaser, at the amount of his execution. On the 21st of November, 1866, Snell

took from the Sheriff his deed for the land.    Subsequently, Snell commenced his action of ejectment for the land, against the tenants of Morgan & Co.; whereupon Morgan & Co. filed their bill to enjoin the prosecution thereof.    This bill was filed on the 24th of August, 1867.    In it they alleged that they acquired a good title to the land by the obligation and deed; that Gentry had no leviable title when Snell's execution was levied on the land, and that he obtained no title by virtue of the Sheriff's deed. They further allege, that in order to avoid all litigation and unnecessary trouble, they tendered to defendants, heretofore on the 5th of February, 1867, the sum of $2,966.46, as redemption of said land, and to avoid all trouble, and to insure defendant against any loss, and told defendant, that, if that sum was not the correct amount, to name the proper sum, and they would pay it; and if said sum tendered by them was not the correct amount, it was a mere mistake and accident, and that they now stand ready, and hereafter to pay that amount into Court, or any other amount ordered by the Court, "but complainants will, in addition to the above, insist that defendant is entitled to nothing, as he had no right to sell said land as the property of said Gentry," etc.    Complainants prayed for a perpetual injunction of defendant's action of ejectment, for the reasons alleged, and that complainants have the right to redeem said land, to remove said levy and Sheriff's deed as a cloud from their title, etc.    Snell answered, and filed his cross-bill, in both

of which he insists upon the validity of his title as deraigned through his levy and sale by the Sheriff, and that the title bond and deed from Gentry to Morgan & Co., are both void, because founded on the illegal consideration of Confederate Treasury notes, and he prays to have them removed as clouds upon his title. He admits that he knew of the title-bond from Gentry to Morgan, when his levy and sale took place. He also admits the tender of the amount, as alleged by complainants, and that he refused to accept the money, and he denies that Morgan & Co. had the right to redeem the land.

In the progress of the cause, W. S. Jett, and other creditors of Gentry, became parties, as also the heirs and representatives of Gentry, claiming that the titles set up by Morgan & Co. and Snell, to the land were void, and that the proceeds thereof should be appropriated to creditors, and the surplus to Gentry's heirs.

The amount tendered by Morgan & Co. to Snell, was brought into Court during the pendency of the causes. The only proof taken, is that of three witnesses as to the tender of money to Snell; they prove, that on the 5th of February, 1867, John P. White, representing Irby Morgan & Co., tendered to James C. Snell, the sum of $2,966.46, in satisfaction of the judgment, interest and costs, (referring to Snell's judgment against Gentry) up to that date, at the same time he waiving no rights in litigation, and stating that they were the purchasers from M. P. Gentry. It is obvious, from this reference to the issues made up

25—vol. 3.

by the pleadings in the case, that the main questions on which the rights of the litigants were supposed to depend, when the cause was prepared for hearing and heard below, have been since that time so thoroughly and repeatedly determined, that they are no longer open for discussion. It is necessary only, therefore, to state the conclusions which follow from these adjudications, upon the issues presented. by the pleadings and facts. 1. The contract between Gentry and Morgan, by which Gentry agreed to sell and convey his land to Morgan, was not rendered illegal and void, by the simple fact that the consideration was $60,000 in Confederate Treasury notes, the contract having been freely and fairly made, and the consideration having been voluntarily received. It follows, that, under the contract, and the execution of the bond by Gentry, acknowledging the payment of the consideration, Morgan was vested with the entire equitable interest in the land and that the legal title was retained by Gentry merely as a trustee for Morgan. When Gentry afterwards executed a deed to Morgan & Co., they then became the owners in fee simple of the entire interest in the land.

2. The paper executed on the 1th of May, 1863, although it contains some language appropriate in a deed, yet, when the entire instrument is examined, and the intention of the parties is sought for, it must be held to be only a bond for title. But, as it was registered on the 12th of May, 1863, it operated as notice from that time to all the world, by §§2030

aud 2073, of the Code. It follows, that, after the execution and registration of the bond, Gentry had no such leviable interest in the lands as could be so levied on and sold as to interfere with or defeat the equitable interest already acquired by Morgan. The most that Snell could acquire by his purchase at the Sheriff's sale, was the naked legal title, and this he would hold simply as trustee for Morgan. Morgan had the same right to have the legal title divested out of Snell and vested in himself, that he had as to Gentry. Snell, therefore, purchased at his peril, and has no right to call upon Morgan to pay the amount bid by him on the land, unless there is something in the pleadings or proof which entitles Snell to this amount.

3. We have already seen, in referring to the pleadings, that Snell rested the validity of his claim to the land upon the assumption, that, as a legal proposition, the contract between Gentry and Morgan was void, because of the illegality of the consideration, as disclosed upon its face. We have seen, also, that while Morgan & Co. insisted on the validity of their title, notwithstanding it rested on the consideration of Confederate money, yet, sooner than risk the settlement of this question of law, they preferred to avoid the litigation necessary for the settlement by paying to Snell the amount of his judgment against Gentry. Hence the proof shows, that, before filing this bill, they tendered to Snell the sum of $2,966.49, in satisfaction of his judgment, interest and costs, up to the

date of the tender, but waiving no rights in litigation, and claiming the land as purchasers.

It is manifest that this tender was made not only as a proposal to avoid what was considered doubtful litigation in regard to the title to the land, but also to secure whatever benefit there might be in claiming the right to redeem the land. Soon after this proposal was rejected by Snell, Morgan & Co. filed their bill and in this they present their claim in two aspects; first, insisting on their title, and second, insisting on their right to redeem, and again tendering to Snell the full amount of his judgment, interest and costs. It was then in the discretion of Snell, to elect to receive his money and terminate the litigation, or to reject the proffered tender, and take the chances of holding the entire tract of land as the result of the litigation. He elected to litigate for the land, and it is now insisted for him, that he had a right to do this, and after having exhausted his chances for the land, that he can still elect to take the amount of his judgment and interest. This position of Snell rests upon the assumption that Morgan & Co. are simply prosecuting their bill to redeem the land, which it is correctly stated, would be such an admission of Snell's title, that they would be estopped from claiming the land without paying the redemption money. But Morgan & Co. do not file their bill simply to redeem, but they set up and insist upon their superior title to the land, and if they shall succeed in that claim, they concede no right in Snell to claim anything. They

repudiate and deny his title, but take the ground, that, if they are mistaken in this, they have brought their money into Court, and propose to rely upon the right to redeem. But to avoid the trouble and expense of the litigation, they offer to indemnify Snell against loss by letting him take the money so tendered and brought into Court. We think it clear, that, when Snell refused to accept this offer of compromise, and elected to risk his title upon the result of the litigation, he thereby precluded himself from any claim to the money tendered, unless it should be decreed to him as the judgment of the Court upon the questions involved in the litigation. Having rejected the money tendered to him by Morgan & Co. as the price of their peace, and forced them to continue the litigation until it is ascertained that he has no title to the land, Snell has clearly forfeited all right to fall back upon an election, which only depended upon his giving up the litigation. It is clear that the question of the right of redemp-does not arise in the case. It is equally clear, that, as the paramount title of the land is in Morgan & Co., Snell has no legal claim to the money brought into Court, and that he has lost the right to claim it as the consideration of a compromise, by refusing to accept the offer at the proper time.

The only ground upon which the creditors of Gentry can attack the conveyance from Gentry to Morgan & Co. is, that it was made to hinder and delay or defraud his creditors. They make no such allegations. It is said that Gentry, being a prominent rebel, was

apprehensive that he might be arrested and his property confiscated, and that he sold his · land to avoid the apprehended consequences. But these allegations are not sufficient to raise either the question of duress or of fraud, and if they were, there is no proof supporting them. As far as the record shows, Gentry sold and parted with his land · freely and voluntarily, and received payment in Confederate money, because he preferred $60,000 in that currency to the land. There is nothing in the case raising the slightest suspicion as to the fairness of the transaction on the part of Morgan, nor of any purpose or intent on the part of either of them to hinder, delay or defraud Gentry's creditors. But if it · could be inferred, by any train of reasoning, that Gentry sold the land under fears of personal arrest, or of confiscation of property, such an inference would be wholly rebutted by the fact, that, after the war closed, he voluntarily executed the deed, in pursuance of his bond, thereby fully ratifying and confirming the trade made in 1863.

It follows that neither the creditors nor the heirs of Gentry are in a position to attack the conveyance. The result is, that the Chancellor's decree will be reversed, and a decree will be rendered setting aside the Sheriff's deed to Snell, as a cloud upon the title of Morgan & Co. and vesting the fee simple title in them. The cross-bill of Snell will be dismissed, and he will pay the costs thereof and of the bill of Morgan & Co. against him, and of the ejectment suit. The

other cross-bills of the creditors, and heirs of Gentry will be dismissed, and they will respectively pay the costs thereof.